Good morning, Your Honors. My name is Lori Tyker, appearing on behalf of Petitioner-Appellant Mr. Larry Whittaker. I will attempt to reserve five minutes for rebuttal. There are several issues included in the briefing in this case. I'd like to begin by discussing the issue regarding ineffective assistance to counsel. Can you say, would you speak up just a bit? Sure. Or draw the mic closer? Thank you. Too short. I'd like to begin by discussing the issue of ineffective assistance to counsel, that counsel was prejudiced or biased against Mr. Whittaker and ceased to function in the active role of an advocate on his behalf. Here, what we have is, and I understand that the state has 28-J the new Plumlee decision. Why don't you start talking about, why don't you address Plumlee, if you don't mind? In terms of the new Plumlee decision, what sort of happened in this case is that the claim is that it was ineffective assistance for failing to advise Whittaker that his counsel was prejudiced or biased against him. It sort of morphed into a conflict case, and I recognize that Plumlee is very different here. However, Morris v. Slappy and Ensminger v. Iowa and United States v. Kroenig and Anders v. California, all of those cases are still good law and do apply to the actual claim that was pled in this case, that there is ineffective assistance to counsel when counsel ceases to function in the active role of an advocate on his behalf. Now, Plumlee, I'm sorry, Morris v. Slappy states that the Sixth Amendment doesn't mean that you have a right to a meaningful relationship between the defendant and his attorney so long as, and here's the critical point in this case, so long as the attorney acts as the defendant's advocate in this instance. And what we've done here is we've outlined the instances where counsel didn't act as Mr. Whittaker's advocate in this case, and he was prejudiced because of the nature and the facts of the charge. How about all the incidences where he did advocate effectively for his client? There are a number of things that he did which were very, very positive. Well, the things that he did were positive, but, again, you need to look at the standard in terms of whether or not his performance was below an objective standard of reasonableness in this case in these charges. What he did and what the State refers to as Herculean efforts on his behalf are that he got co-counsel appointed to help represent Mr. Whittaker. Well, under Nevada law, Chapter 250, he's entitled to two lawyers. That's statutory. That's a given. The judge should have appointed another lawyer on Mr. Whittaker's behalf. The fact that counsel filed a motion for that is basically not much. The other thing that the State makes much ado about is that he got an aggravator. One of the aggravators struck. There were two aggravators in this case that caused the State to seek the death penalty in this case. The one aggravator that was struck was an advocator that, again, statutorily didn't even apply to this case, that Mr. Whittaker was under a term of imprisonment. Mr. Whittaker had a gross misdemeanor. A gross misdemeanor does not apply. The statutory aggravator doesn't apply. It's, again, statutorily something that is a throwaway. So what else did counsel do on his behalf in terms of representing him? Well, our argument is not much. He had some things to work with, and one of the things is precisely what the State poses as the theory in this case, that Whittaker's attorney was in such a position with a client who murdered a helpless infant while under the influence of methamphetamine. Anyone defending a murder case realizes that under the influence of methamphetamine is a possible defense to this case and a defense to first-degree murder. He did absolutely nothing in terms of counsel was on notice that he was under the influence of drugs and alcohol at the time of the offense. He didn't do anything in terms of investigating that, having him evaluated, taking a look at anything having to do with that. He was on notice that competency was an issue because he did have the defendant psyched in his very artful way regarding dealing with the torture mitigator and learned that Mr. Whittaker had a lot of issues that could have been tremendously investigated and presented in mitigation, not only in terms of the actual facts of the case, had the case gone to trial, but also in terms of mitigation at sentencing, and sentencing where he was facing a term of life with or without the possibility of probation. Of course, Mr. Whittaker received life without. His counsel basically got up and said, well, you know, this doctor said that he has these things, therefore, Your Honor, give him life. Let me ask you this. You have a habeas proceeding and he has new counsel at that time, correct? I'm sorry? In his habeas petition, he has new counsel, correct? He does not have any. In his post-conviction proceeding, he was never appointed counsel. He was always pro se? He was always pro se. Okay. Welcome to Nevada. So he became, you were his counsel at what point in time? When he went to federal court. The federal district court appointed us as counsel. At that time, there could have been some detailed information by new counsel in the habeas petition explaining with some specificity what type of medication he was taking, why it would have affected his ability to plead at the time that he did plead. I don't see anything with that type of specificity in support of the habeas, federal habeas application. And I just wonder whether or not we're dealing with some generalities here that could have been pinned down when he had competent counsel. The generalities, and I do believe that we did present the specifics of that in the federal habeas proceedings. The problem that you have here, Your Honor, is that in terms of Mr. Whitaker went back. He went to federal court first. We were appointed to represent him. Claims were determined to be unexhausted where we have the other issue regarding Russell v. Rolfe. He went back down to state court and again was denied any kind of process in Nevada and wasn't given a lawyer. He's still not represented by counsel at that time? Exactly. Throughout the entire state proceeding, he had not? Both times. Exactly. Both times he was not granted counsel despite the fact that he was given life without. Now he comes back to federal court and he has counsel. Correct. Focus on what you did then at that particular point in time to convince the court or to try to convince the court that he should then be given a hearing on his federal habeas claim. What we did then was we developed facts regarding what had been shown by the psychologist back when he pled, in addition to subpoenaing all of his detention records where they note in numerous different ways the number of times that he had been referred to the psych unit. He was placed in the psych unit. He was placed in isolation on suicide watch. He was medicated with heavy doses of antipsychotic medications and presented all of those records. All of those records we present to the federal court and say, hey, you know, he wasn't? Mr. Whitaker went back twice. He raised this claim twice on his own because he wasn't granted counsel in state court. We've shown you all of these records. Now let us have a hearing. Let us have a hearing. Let us bring the doctors in to testify. Let us subpoena the jail. Let us bring the jail doctors over. And let us put Mr. Whitaker on to talk about what the effects of the sinequan was on him when he was going through this horrific time where he was on suicide watch at least two or three times. But you have nothing here in support of your federal habeas hearing, which is what you're looking for here, I suspect, to tell us and inform us by some professional what the effect of this medication was, the nature of the medication he was taking, the likely effect it may have had upon him at the time that he pled guilty. I believe that we did outline that in the Traverse. You think you have sufficient to warrant a hearing in that respect? I believe it's enough facts that should have allowed us a hearing to fully flesh all of that out. Isn't that really the focus issue we have to decide here, whether you submitted enough on your federal habeas proceeding to warrant the hearing? I believe that we did, Your Honor, and that that should have been allowed in district court considering the fact that he wasn't given it twice in state court. At the end of the day, what relief do you want? Do you really want to go back to trial on this and roll the dice and have the state afforded the opportunity to seek the death penalty again? That's something that has been discussed with Mr. Whitaker, and yes. He received a sentence of life without. There's one aggravator, and yes, that's something that he would like to do. Counsel, is the principal failing of trial counsel, the failure to investigate? Is it the defense problem? Is that it? I have to say that the handcuffs incident just doesn't move me very much. I understand it's aggravating, but you were not in front of a jury, and it was explained that they thought that the context had to do with whether or not your client would need his hands free to write something, and since your client was illiterate, it seems aggravating, but it doesn't really sort of demonstrate a hardened conflict between counsel and a client. I understand it's atmospherics, but it ---- Well, I think it's atmospherics that goes exactly to the extent of how effectively and how hard this defense counsel went, starting from the beginning, to represent Mr. Whitaker as his client, pursuant to ABA standards, that he develop a relationship with his client. It's not ---- He didn't say that, you know, and again, I understand. You know, we all know that in a preliminary hearing, it's in front of a justice of the peace. There's not a jury there. You know, he's in handcuffs, big deal. Well, the big deal is what he said. He didn't say, My client can't write. I don't need the handcuffs taken off. His lawyer said, Nah, I don't think so. It's just not going to be necessary. You know, it's one thing to sort of recharacterize the whole thing here. Since we don't have a transcript, we can't even tell the voice inflections. I could do an impression. And I'm sure you could do a very, very good job. But it doesn't ---- This is not really sort of, you know, good evidence of a hardened conflict between ---- And we don't have evidence that he sort of spoke up and said, What kind of a lousy counsel did you guys appoint for me? I want out of these handcuffs, and I want out of here now. I understand. And again, you know, my response to that would be, Your Honor, that let's have a hearing. Just a hearing, any hearing, anywhere along this whole process. You know, again, the handcuffs being removed is the first instance. Again, and that sort of leads into the second. What's your best evidence of the conflict between Whitaker and his counsel? Is it the failure to investigate? I believe it's the failure to investigate. And along with ---- Does that stand freely? Do we have to be looking for a conflict between counsel? Or can we just be relying on the fact that it was just an utter failure of counsel here? An utter failure to function in the active role of an advocate pursuant to Morris v. Flappi and ABA standards. In other words, do you ---- That would be my argument. You don't think you have a freestanding case of ineffective assistance? You have to find a conflict? I'm sorry, one more time. Well, you would normally say, for example, when you start talking about ABA standards, that the attorney didn't conform, that the attorney didn't do anything, it's a failure to investigate, it's ineffective assistance, end of story. But you're relying on conflict. So are you implicitly conceding that you don't have enough in the way of a freestanding claim of ineffective assistance of counsel to win? No, I'm arguing the opposite. The first, you know, the former. It was ineffective assistance of counsel. Why do we need to get into conflict at all then? I'm sorry to interrupt, but why do we need to get into conflict? Because it's very hard to see, given the standards on conflict now, post Plumlee and before, given the lack of an objective evidence in the record of conflict, because you usually have a defendant screaming, I don't want this lawyer, I don't want this lawyer, and we talk about Hobson's Choice. We don't have that here, really. Correct. And, Your Honor, I think what happened in this case, and going back and reading the district court order and sort of the history, you know, this is a long history here of 14 years, I think that what happened was this claim, the way that it was pled to begin with and the way that Mr. Whitaker raised it in proper person was that it was ineffective assistance of counsel and counsel ceased to function in the role of an advocate and didn't investigate and didn't do all of those things. And from what I could see in looking back at the history is as this went along and went, you know, to state court, back to federal court, state court, back to federal court, that in federal court the federal district judge sort of morphed this claim into the conflict. And so what my argument is that it needs to go back to where it began and not the conflict deal with the ineffective assistance of counsel where counsel ceases to act as an advocate and doesn't investigate and doesn't do his job and that it was unreasonable. I'm sorry, but everything seems to reduce itself to whether or not there was an adequate investigation as to his competency. It all comes down to competency. That's what you're speaking about, I take it. No other defense out there. You're simply talking about competency, right? So are you looking for one hearing or two hearings, one dealing with the issue of the effectiveness of counsel and a separate hearing dealing with competency or is it just one hearing that you contemplate on whether or not he was competent under the circumstances to plead at that time? I think that it could easily be handled in one hearing with different subsections. Do you understand? Because, again, this issue morphs into the other issue regarding competency. And I think that both of them are important. I'm trying to visualize what that hearing would look like because I have to conduct these hearings periodically on my lower level of my judicial responsibilities. And I know the Second Circuit has written a decision recently requiring that there be a hearing on the issue of ineffective assistance of counsel. There has to be some showing here to warrant it. And we really wrestle with these problems. When do we have a hearing on a habeas? When do we not have a hearing? And it's something that really is in tension right now back in New York. But you're talking strictly about competency here. So even if we're not talking about ineffective assistance of counsel, however you want to conceptualize that, we still ultimately come down to the issue of whether he was competent. You're telling me in your federal habeas proceeding you submitted enough evidence to justify a media hearing on that issue. Do I see this correctly or am I off on some? I believe that you see it correctly. However, in terms of what I would ideally, the order that I would love to have written here, is that this is remanded back to the district court and that we do get a hearing and that we get a hearing regarding a couple of different things. We get a hearing regarding competency, which is the next issue that was briefed, and that his guilty plea was not knowing because he wasn't competent at the time. And that has to do with all the antipsychotic medication, all of that. I think you submitted enough to trigger that hearing here. Yes, I believe that we did. In addition, what needs to happen here and what never seems to happen in the state of Nevada in state court proceedings, it's just so rare in these cases where clients are facing life without sentences, multiple lives, hundreds and hundreds of years, is we need a post-conviction hearing regarding effective assistance of counsel and what was done and what wasn't done. And we would like to have the opportunity to present to a district court judge such as your Honor all of the facts as to why counsel was prejudiced against him and counsel ceased to function in the active role of an advocate. Here's what needed to be done in this case. Here's the investigation that needed to be done. Here are the doctors that needed to testify. Here's what he should have put on in terms of mitigation. He got up there and said, ah, you know, he's got mixed personality disorder with paranoid features, your Honor, give him life with. It just doesn't cut it. It doesn't cut it. It doesn't cut it when someone is facing the ultimate punishment. And so that would be my request in addition to the first claim. Do you want to reserve some time for rebuttal? I do. Okay. We have about three minutes left. Clear from the State. May it please the Court, my name is Keith Monroe. I represent the named respondents. I'd like to begin with the conflict of interest claim. As opposing counsel noted less than a month ago, this Court sitting on Bonk issued Plumlee v. Masto where it reiterated the standard set forth in Kyler v. Sullivan for reviewing a conflict of interest claim. The three-judge panel decision in Plumlee was cited by Appellant in her brief and by the District Court below. Subsequent to the briefing in this matter, Plumlee was issued. That's why the notice of supplemental authority. Oh, certainly, yes. Okay. In Plumlee this Court held the Supreme Court cases make clear we are talking about legal conflicts of interest and incompatibility between the interests of two of a lawyer's clients or between the lawyer's own private interests and those of a client. Let's assume for the sake of the argument we set aside the conflict. Isn't this just a straightforward case of ineffective assistance of counsel in sentencing and failure to advise? I mean, it seems to me I understand why one might bring in conflict, but even to show prejudice you have to show that making any of those, doing any of those, taking those actions would have made a difference. And so it seems to me that when you distill it down, the key question is was he constitutionally effective at sentencing and advising his client, right? But I don't think that's the issue before this Court. I think the COA was granted on the Kyler v. Sullivan issue because of the question about Plumlee v. Masto. I don't think there's a legal conflict here. One hasn't been cited in the brief. I think counsel in this case did act as an advocate, did work at the preliminary hearing, cross-examined the witnesses, worked with the district attorney's office, got an aggravator struck, had a psychologist, had him evaluated, was able to get a sentence of something other than the death penalty at the penalty hearing. You know, there wasn't a lot to work with here, but he made a cogent argument on his client's behalf. I think client was effective. I think one of the motions filed pro per by Mr. Whitaker in this case was a motion to reduce sentence. I think that's what this case is about. Mr. Whitaker wanted to get life with as opposed to life without. I think the facts, given, you know, that a four-week-old baby was beaten to death, perhaps with a club, and the fact that Mr. Whitaker's prior other child had been taken away by authorities made this a very difficult case, and I'm not sure there was a lot to work with in this case. No, but the sentences for these kinds of cases go all over the map in different jurisdictions. In Arizona, on one hand, we had a case recently where the death penalty was imposed in a case like this. But I've seen other cases where it's 10 years, 20 years. It really does vary quite a bit. So you have a lot to work with on sentencing, it would seem to me. And that was the key case. There's no doubt that he did this, right? I mean, the key issue in the case. No doubt that he did it. But there really was, after he got the death penalty taken off the table, it looks to me in the record that he essentially said, well, my work's done and didn't make any effective arguments after that. That's just my impression. Well, we don't know what the arguments, I mean, essentially after he pled, the question is what sentence was he going to get. There's nothing in the pleadings that show that there was a better argument to be made. He set forth Mr. Whitaker's history. He argued persuasively why Mr. Whitaker shouldn't have gotten death or shouldn't have gotten life with, excuse me. Right. Well, can you then address, obviously, the concern that I expressed with your colleague about whether or not the district court now that is represented by counsel should have a competency hearing? Is there enough here to support that? No, I think Judge Reed got it right below when he said there wasn't a need for any type of competency hearing in this matter, an evidentiary hearing, that there was enough in the record. They did submit Mr. Whitaker's medical records from prior to trial. I think Judge Reed got it right when he said those are pretty unremarkable. I mean, yes, he was depressed. Yes, he had sleep disorder. But this is a gentleman's case. It doesn't ring the bell. He considered all of that there wasn't record evidence before him in deciding whether or not there need to be a competency hearing. Correct. I'd like to touch on the Russell v. Rolfe's claim. Whitaker does not dispute that he procedurally defaulted several of his claims in state court. However, he argues that respondents are judicially a stop from asserting procedural default in federal court. A statement by Judge Reed in the order below, I think, is important when considering this claim. Judge Reed said, when granting respondents' previous motion to dismiss, this court was abundantly aware of the procedural obstacles Whitaker confronted when he chose to return to state court. This is important because the holding in Russell v. Rolfe's state, having persuaded the district court to deny appellant federal review on the ground that he had an adequate and available remedy. This, I think, indicates an improper persuasion was present in that case. Given Judge Reed's finding, any argument of misrepresentation in the prior proceeding or any alleged improper persuasion of the court is completely without merit. The case is more like Ortiz, in other words. I think it's more like Ortiz. What do we do with Russell? Do we just let it fester out there? Or do you think the time has come for us to say Russell is really not good law anymore? You know, I think Russell has been limited to its facts by Ortiz v. Stewart. I think it's a pre-ed the case. Remember, Congress gave respondents a statutory right to insist on complete exhaustion. 28 U.S.C. 2254. I don't understand the state's posture, though, in making these arguments because we see this occasionally. I think more out in Nevada than maybe other states. But I don't understand why the state doesn't come in and say you're procedurally defaulted. You're required to do it. It's a waste of everybody's time when the state doesn't come in and lay its cards down and say you didn't exhaust and you're procedurally defaulted. Now, most other AG's offices go right at it from the get-go and deal with the issue of procedural default at the first hearing. I don't understand why the state, and it seems to happen in Nevada more than others, why the state doesn't do that. Well, I think because the cards are really in Mr. Whitaker's hand. We raised exhaustion. Mr. Whitaker was given a choice what to do. He could have said there's no need to return to state court. I'm going to be procedurally barred. But we do have an exception. Why would he say that? What? Why would a pro se prisoner say that? I know that I'm procedurally barred from. Well, all right. You're right at that point. But still, why would you say, by the way, I'm going to concede that I've got bad claims? Well, he knew he had bad claims. He probably shouldn't have gone back to state court. What he probably should have done is proceeded with his federal habeas review in the first case. He chose to do that. I'm not sure why. Maybe on advice of counsel he thought he had good cause to overcome the state procedural bars. Not sure of that answer. But when the state stands up, and I realize the difference between Ortiz and Russell, and I think you probably have the better argument in this case, but when the state stands up and says, Judge, dismiss this, let him exhaust, but saying to the judge, but when he tries to exhaust later, we're going to argue he's procedurally defaulted and we're going to come back to your court in about three years, it does seem a little disingenuous, I must say. Well, maybe that's something we'll consider in future cases. But in this case, I think we were consistent with Ortiz versus Stewart. I think we raised exhaustion. We recognized there may have been a problem with procedural default for Mr. Whitaker, but that's his counsel's decision whether or not to go back to state court. Or he could have said to the federal court, Judge, you know what, Judge, I'd like you to rule on the state procedural bar rules. But instead he went back to state court. My guess is he may have had a reason. Turning to the last claim presented, Whitaker claims he was incompetent to enter his guilty plea. The standard for competence to enter a plea is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. I don't think there was a bonafide doubt as to Whitaker's competency  Whitaker entered his plea knowingly and voluntarily. The record shows that Whitaker consulted with his counsel and he understood the proceedings against him. The state district court made some factual findings of Whitaker's post-conviction proceeding. I'd note that it's the same judge that did his plea canvas. So he knew Mr. Whitaker. He remembered the plea canvas. He had a recollection of Mr. Whitaker's demeanor and his appearance in court that day. The district court held the record leaves no doubt that the defendant understood the waiving of his constitutional rights. There is no indication in the plea canvas or anywhere else in the record that the defendant did not understand his actions when he entered his guilty plea or that he was under the influence of any medication. To the contrary, the defendant's plea canvas indicates that he very much appreciated the events as they were taking place. The defendant said that he was fully informed of the punishment the offense carried. He further indicated that he had read and understood the agreement and had discussed the negotiations with his counsel. He also said he understood the consequences of his plea. During the defendant's plea canvas, the court asked, do you have the right to have a trial in this matter where you would have the right to be proven guilty beyond a reasonable doubt? Do you understand? Which he replied, yes, sir. In the defendant's guilty plea memorandum, he said, I waive my right to trial by jury by which the state would have to prove my guilt beyond a reasonable doubt of all elements of my crime. He said in open court he discussed the plea memorandum with his counsel that he understood it. I think it's clear Mr. Whitaker understood what he was doing there that day. This, as I noted earlier, I think is a case where Mr. Whitaker would like to be sentenced to life with the possibility of parole, but I don't think that's sufficient to give habeas relief. The factual findings by the State District Court were reasonable. There's no clear and convincing evidence to rebut this. I think you also have to remember that his trial counsel is presumed to have been competent, and he was silent as to any questions about Mr. Whitaker's competency. The precedent in this circuit shows that that's some evidence that there is no incompetency. I think there's simply no evidence that anyone perceived Mr. Whitaker as unable to comprehend the proceedings or assist his counsel. I think there's also a circuit precedent that retrospective competency determinations at this point, 14 years later, are disfavored. I think in state court the state correctly identified Strickland v. Hill as the governing federal law on the ineffective assistance portion of this. I think habeas relief is not warranted. I think we have a reasonable application of federal law and reasonable factual determinations by the state court. Thank you, counsel. Very quickly, Your Honors. In terms of whether or not what was presented by us regarding competency was unremarkable, I would take issue with what the district court judge held in terms of it being unremarkable, the findings within those medical records. I don't think that it is unremarkable that he had submitted 19 complaints regarding to the fact that he couldn't sleep and he was unbelievably depressed and anxious over what was happening to him. I don't think that it was unremarkable that the detention center medical staff referred him for psych evaluation seven times and he was placed on suicide watch at least three. I also don't think that it's unremarkable that he was placed on an extremely high dosage of Sinoquan, an extremely strong antidepressant, and that that should allow us to have an evidentiary hearing on those points. Regarding judicial estoppel and Russell v. Rolfes, briefly, I could talk about that for another 20 minutes, but I do take issue with the fact that this is not Ortiz and it is Russell v. Rolfes in this situation, the reason being is that in Ortiz, the court specifically held that judicial estoppel didn't apply there because the state didn't argue that he had an adequate and available remedy. In this case, the state did argue that he had an adequate and available remedy, and that's what's so disappointing and discouraging when we litigate these cases over and over and over again, just as you suggested, Judge Thomas, in Nevada. What happens is we — this is Russell v. Rolfes. They said, they argued in their motion to dismiss that there was available and adequate state remedies. They cited five pages of exhaustion law, and then at the end they respectfully request that the district court dismiss it so that Mr. Whitaker can go back down and exhaust. We oppose that, and they drop the footnote. They drop the footnote saying, and we're going to raise these procedural bars. They drop that footnote and think that that's okay, that gets them out of this Russell v. Rolfes bind that they've found themselves into. Well, Ortiz is completely different because Ortiz, they said there, the circuit said in that case that he didn't argue that there was — the state didn't argue that there was available remedies for them, and that's how this case is distinguishable from Ortiz. Also, if you take a look at Ortiz and examine it thoroughly, judicial estoppel is almost a throwaway argument there. It's about a paragraph of the opinion, Russell v. Rolfes. We've got pages and pages dealing with judicial estoppel and the fact of these changing — Do you think Russell survives AEDPA? I'm sorry? Do you think Russell survives AEDPA? Yes, I do. I think Russell survives AEDPA. We've got New Hampshire v. Maine. We've got Coleman v. Thompson, but we don't have any clear U.S. Supreme Court law or AEDPA. I just don't think that AEDPA means that Russell v. Rolfes is gone. If you take a look at New Hampshire v. Maine, Justice O'Connor talks about Russell v. Rolfes, which is interesting. Another last point in my five seconds is that we have — we opposed this specifically stating Russell v. Rolfes, that we did not want to have to go back down to state court because we knew that it was futile. We knew that we were not going to get adequate state process. Mr. Whitaker hadn't gotten it before. Why should it be any different here? And we stated under Harris v. Reed 2254B that there was an absence of a corrective process or circumstances rendering such processes ineffective. And we stated Russell v. Rolfes and said, don't make us go back down here. The state is playing fast and loose. They're doing exactly what the circuit said you can't do. You can't argue these contrary decisions and then come back and penalize us for doing exactly what you wanted to happen and not allow these claims to be heard on the merits. And I'd submit it on that. Thank you, counsel. The case just heard will be submitted. Thank you both for your arguments. We'll proceed to the final case on this morning's oral argument calendar, which is SWA Painting v. Golden Eagle Insurance Company.
judges: Thomas, Bybee, Block